106 P.3d 376

Timothy A. DUNLAP, Petitioner–
Appellant,

v.

STATE of Idaho, Respondent.

No. 28269.

Supreme Court of Idaho,
Boise, September 2004 Term.

Nov. 30, 2004.

Rehearing Denied Feb. 16, 2005.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Mark James Ackley, Deputy State Appellate Public Defender, Boise, argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. L. Lamont Anderson, Deputy Attorney General, Boise, argued.

BURDICK, Justice.

The appellant, Timothy A. Dunlap (Dunlap), appeals the district court's order denying his petition for post-conviction relief involving his guilty plea to first-degree murder. The district court denied post-conviction relief and found that Dunlap received effective assistance of counsel. Dunlap appeals, asking this Court to reverse the district court and grant him post-conviction relief. Dunlap raises several issues, including ineffective assistance of counsel, unconscionable plea

agreement, and prosecutorial misconduct. Additionally, Dunlap asserts several constitutional issues regarding his guilty plea that were not pled in his post-conviction petition. This Court will not review issues raised for the first time on appeal. We affirm the district court's denial of post-conviction relief.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 16, 1991, Dunlap entered and robbed the Security State Bank in Soda Springs, Idaho. Dunlap entered the bank, stood within a few feet of bank teller Tonya Crane, and ordered her to give him all of her money. Without hesitation, Tonya Crane did so. Dunlap immediately and calmly pulled the trigger of his sawed-off shotgun, which was less than two feet from Tonya Crane's chest, literally blowing her out of her shoes. Police officers responded immediately. When the officers arrived at the bank, Tonya Crane had no pulse. When taken to the hospital she was pronounced dead on arrival.

Dunlap fled the scene, but subsequently surrendered to police. After being given his _Miranda_[1] rights, Dunlap confessed to the murder and to a murder that occurred ten days before in Ohio. The following day, Dunlap again confessed and explained how he planned and completed both murders. Dunlap was charged with first-degree murder and robbery.

Within days of his arrest, Dunlap arranged to be interviewed by Marilyn Young, Associate Editor of the Albany New Tribune in Indiana. During the interviews Dunlap explained to Young how he murdered his girlfriend in Ohio with a crossbow and then traveled west where he subsequently planned to rob the Soda Springs' bank. Dunlap described the bank robbery and Tonya Crane's murder to the editor.

In Idaho on December 30, 1991, Dunlap pled guilty to first-degree murder for shooting Tonya Crane during the course of a robbery. "In the agreement, the State dropped the robbery and use of a firearm in the commission of a robbery charges, and

Dunlap pled guilty to first degree murder and use of a firearm in the commission of a murder." _State v. Dunlap_, 125 Idaho 530, 531, 873 P.2d 784, 785 (1993) (_Dunlap I_ ). The plea agreement allowed the State to seek the death penalty. _Id._ The plea agreement recognized that Dunlap had been indicted in an Ohio killing. _Id._ The agreement also provided that:

> [T]he Ohio indictment, information, witness statements, and evidence could be submitted to the district court through the presentence report and could be considered by the district court as evidence in aggravation. Dunlap also agreed not to object to the Ohio information, witness statements, or evidence except on the basis that he had not been convicted of the Ohio crime at the time of the agreement. In return, the State agreed not to call as a witness at sentencing any Ohio state police officer, forensic pathologist, or other Ohio law enforcement official. Nor would the State introduce any pictures of [the Ohio victim] taken by Ohio law enforcement authorities after her death.

_Id._

During the plea colloquy the court questioned Dunlap and his attorneys about Dunlap's mental history and whether it would have any impact on his ability to plead guilty. Dunlap informed the court he spent time at Madison State Hospital for seizures and other mental illnesses in April and June of that current year. Dunlap's attorneys informed the court they had Dunlap's records from Madison State Hospital, LifeSpring Mental Health Services, and his military records. Dunlap's attorneys reported they did not believe there were any mental health reasons why the court could not accept the defendant's plea. The district court judge requested the records to ensure there were no problems with accepting Dunlap's guilty plea. The district court judge continued with the hearing, but informed the parties he would make his decision about accepting the plea after he had a chance to review the documents. After reviewing the records, the court accepted Dunlap's plea.

---

1. _Miranda v. Arizona_, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On January 21, 1992, the State disclosed a statement by Danny Gillette, Dunlap's cellmate, and an interview with Gillette by Lieutenant Joe Rice. Both the interview and the statement were obtained by law enforcement on December 30, 1991. One of Dunlap's attorneys represented Gillette on an unrelated charge. Once the court discovered the conflict it inquired about the situation. The attorney explained he would not feel limited in cross-examining Gillette.

After the aggravation-mitigation hearing the district court imposed the death penalty. Dunlap appealed his conviction and sentence, but this Court affirmed both. *Id.*

On May 12, 1994, Dunlap filed a petition for post-conviction relief. The district court dismissed the petition because it was not filed within forty-two days of entry of judgment. This Court reversed the district court's decision and remanded Dunlap's case for further proceedings. *Dunlap v. State,* 131 Idaho 576, 961 P.2d 1179 (1998) (*Dunlap II* ).

Prior to the commencement of the evidentiary hearing, the State conceded that error occurred during Dunlap's sentencing proceeding and he would have to be resentenced. On January 11, 2002, based on the State's concession, the district court ordered a new sentencing hearing be held, but denied Dunlap's guilt-phase post-conviction relief. Dunlap timely appealed from the denial of the post-conviction application.

Upon the State's motion the district court stayed Dunlap's resentencing. Dunlap did not file a notice of appeal challenging the stay.

## STANDARD OF REVIEW

■ Post-conviction proceedings are civil in nature and therefore the applicant must prove the allegations by a preponderance of the evidence. *McKinney v. State,* 133 Idaho 695, 699–700, 992 P.2d 144, 148–49 (1999). On review, the appellate court will not disturb the lower court's factual findings unless the factual findings are clearly erroneous. *Id.* at 700, 992 P.2d at 149. The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn

from the evidence are all matters solely within the province of the district court. *Peterson v. State,* 139 Idaho 95, 97, 73 P.3d 108, 110 (Ct.App.2003) (citing *Larkin v. State,* 115 Idaho 72, 764 P.2d 439 (Ct.App.1988)). When reviewing mixed questions of law and fact, this Court will defer to the factual findings of the district judge unless those findings are clearly erroneous. *Roberts v. State,* 132 Idaho 494, 496, 975 P.2d 782, 784 (1999). This Court exercises free review of the district court's application of the relevant law to the facts. *Id.*

## ANALYSIS

## I. ISSUES NOT RAISED BELOW WILL NOT BE CONSIDERED ON APPEAL

The State argues that a number of the issues presented on appeal were not raised in Dunlap's post-conviction application, and thus are being raised for the first time on appeal. Dunlap claims that the parties expressly or impliedly tried the appealed issues and pursuant to I.R.C.P. 15(b) the pleadings were deemed amended. Therefore, he contends the issues are properly before this Court. The question we must first decide is whether. the parties expressly or impliedly consented to try issues not raised in the post-conviction application.

■ Generally, the Uniform Post–Conviction Procedure Act (UPCPA), I.C. §§ 19–4901 to –4911, applies to post-conviction proceedings. *McKinney v. State,* 133 Idaho 695, 700, 992 P.2d 144, 149 (1999). Idaho Code section 19–4903 mandates that the application for post-conviction relief "specifically set forth the grounds upon which the application is based, and clearly state the relief desired." "All grounds for relief . . . must be raised in [the defendant's] original, supplemental, or amended application." I.C. § 19–4908. "An application for post-conviction relief differs from a complaint in an ordinary civil action[.]" *Goodwin v. State,* 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct.App.2002). The "application must contain much more than 'a short and plain statement of the claim' that would suffice for a complaint under I.R.C.P. 8(a)(1)." *Id.*

In capital cases, I.C. § 19–2719 modifies and supersedes the UPCPA. *McKinney,* 133 Idaho at 700, 992 P.2d at 149. The purpose of I.C. § 19–2719 is to eliminate "unnecessary delay in carrying out a valid death sentence." *Rhoades v. State,* 135 Idaho 299, 301, 17 P.3d 243, 245 (2000) (quoting *McKinney v. State,* 133 Idaho at 705, 992 P.2d at 154). The procedures and time limits of I.C. § 19–2719 must be followed in capital cases. *McKinney,* 133 Idaho at 700, 992 P.2d at 149. Generally, in a capital case, a claimant for post-conviction relief will have only one opportunity to raise all challenges to the conviction and sentence. *Id.* All known challenges must be raised in one post-conviction application within 42 days of the filing of the judgment imposing the death penalty. *Row v. State,* 135 Idaho 573, 576, 21 P.3d 895, 898 (2001). Any known challenges or claims not raised within 42 days are deemed waived. *Id.* Our Court strictly construes the waiver provision of I.C. § 19–2719. *Id.* at 701, 992 P.2d at 150.

Generally, post-conviction applications are governed by the Idaho Rules of Civil Procedure. *Cole v. State,* 135 Idaho 107, 110, 15 P.3d 820, 823 (2000). Idaho Rule of Civil Procedure 15(b) provides in part, "[w]hen issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." "The purpose of Rule 15(b) is to allow cases to be decided on the merits, rather than upon technical pleading requirements." *Noble v. Ada County Elections Bd.,* 135 Idaho 495, 500, 20 P.3d 679, 684 (2000). "Implied consent to the trial of an unpleaded issue is not established merely because evidence relevant to that issue was introduced without objection. At least it must appear that the parties understood the evidence to be aimed at the unpleaded issue." *M.K. Transport, Inc. v. Grover,* 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980). The trial court has the discretion to determine whether the parties have consented to the trial on the unpled issue. *Doyle v. Ortega,* 125 Idaho 458, 461, 872 P.2d 721, 724 (1994). "[W]hen a theory is fully tried by the parties, I.R.C.P. 15(b) allows a court to base its decision on a theory not pleaded 'and deem the pleadings amended

accordingly[.]' " *Paterson v. State,* 128 Idaho 494, 502, 915 P.2d 724, 732 (1996).

The district court noted three issues when denying the post-conviction application. The three issues were: "1) whether trial counsel were ineffective by not having Dunlap evaluated or seeking a competency hearing before tendering a guilty plea; 2) whether trial counsel were ineffective in negotiating and recommending the plea agreement; and 3) whether trial counsel were ineffective in not seeking withdrawal of the guilty plea prior to or after sentencing." In review of the post-conviction application, the defendant raised these same three issues. The district court did not amend the application by ruling on any unpled theory tried by the consent of the parties.

The primary issue Dunlap presents on appeal is whether he was deprived of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and corresponding provisions of the Idaho Constitution, because he was mentally incompetent when he pled guilty. This issue is not contained in Dunlap's petition for post-conviction relief. There is no evidence in the record that the parties stipulated to try this issue in district court. The mental health issue that was tried, was whether Dunlap received effective assistance of counsel when his attorneys failed to obtain a psychological evaluation pursuant to I.C. § 18–211 prior to Dunlap pleading guilty. There was evidence about Dunlap's mental condition and previous care at the post-conviction hearing related to this issue but simply because the general evidence was admitted relating to whether Dunlap was competent to plead guilty does not demonstrate the parties consented to try any other issue. *M.K. Transport, Inc.,* 101 Idaho at 349, 612 P.2d at 1196. Furthermore, although not a requirement, Dunlap failed to make a formal motion to amend the pleadings pursuant to I.R.C.P. 15(b). If Dunlap had made a motion to amend it would certainly have helped clear the record as to what the parties did try under I.R.C.P. 15(b). More importantly, the district court did not

identify this as an issue tried by the parties and thus did not rule on the matter.

"Rule 59 [of Idaho Rules of Civil Procedure] is a mechanism 'designed to allow the trial court either on its own initiative or on motion by the parties to correct errors both of fact and law that had occurred in its proceedings.' " *State v. Goodrich,* 104 Idaho 469, 471, 660 P.2d 934, 936 (1983). Pursuant to I.R.C.P. 59(e) Dunlap had the right to motion the district court to alter or amend the judgment within 14 days of the order denying post-conviction relief because of a perceived issue impliedly tried in the hearing pursuant to I.R.C.P. 15(b). Dunlap's failure to motion the district court is consistent with the notion that the parties had not consensually tried any additional issues. We hold that whether Dunlap was deprived of his rights under the United States and Idaho Constitutions because he was incompetent when he pled guilty was not tried either expressly or impliedly before the district court. This Court will not consider this issue as it is being raised for the first time on appeal. *Sanchez v. Arave,* 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

Dunlap now presents the appellate issues in a manner designed to expand the issues pled, even if they were not presented or ruled on by the district court. The following issues are being raised for the first time on appeal and will not be considered by this court: whether Dunlap was denied due process because the trial court failed to ensure he was competent to plead guilty; whether Dunlap's guilty plea was not knowing and voluntary because of ineffective assistance of counsel for counsel's failure to adequately investigate the Ohio offense and the charged offense, litigate motion to suppress and a motion in limine, and failed to know and understand relevant and applicable law; whether Dunlap's constitutional rights were violated due to a conflict relating to the public defender contract and the plea agreement; whether Dunlap's constitutional rights were violated because of prosecutorial misconduct for failing to disclose evidence of the Ohio case and in obtaining and presenting false statements from Danny Gillette; whether Dunlap's guilty plea violates the federal or

state Constitutions because he was not informed of the true nature of the charges against him or the full extent of the rights waived by a guilty plea; and whether Dunlap was deprived of his Constitutional rights because trial counsel failed to ensure a complete record of all proceedings and counsel's failure to ensure that Dunlap was present for all proceedings.

## II. DUNLAP RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL

Dunlap asserts his constitutional rights were violated by counsels' ineffective assistance with the pretrial investigation leading up to his guilty plea, the entry of the plea, the failure to withdraw his guilty plea, the failure to have him present at all hearings, and the failure to file a timely post-conviction application. The issues regarding ineffective assistance of counsel that will be considered by this Court are as follows: (1) whether trial counsel were ineffective when they did not have Petitioner evaluated or seek a competency hearing before tendering a guilty plea; (2) whether trial counsel were ineffective in negotiating and recommending the plea agreement; (3) whether trial counsel were ineffective in not seeking withdrawal of the guilty plea prior to or after sentencing; (4) whether trial counsel were ineffective in failing to investigate and present evidence in mitigation; (5) whether trial counsel were ineffective in not timely filing the post-conviction petition; and (6) whether trial counsel were ineffective due to their conflict of interest for simultaneously representing the prosecutor's key witness.

Article I, section 13 of the Idaho Constitution guarantees a criminal defendant "reasonably competent assistance of counsel." *State v. Wood,* 132 Idaho 88, 95, 967 P.2d 702, 709 (1998) (quoting *Gibson v. State,* 110 Idaho 631, 635, 718 P.2d 283, 287 (1986)). Likewise, the Sixth Amendment via the due process clause of the Fourteenth Amendment assures a criminal defendant effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 685–86, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674, 691–92 (1984); *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). There is a strong presumption that

trial counsel was competent and that trial tactics were based on sound legal strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694; *State v. Mathews,* 133 Idaho 300, 306, 986 P.2d 323, 329 (1999); *Wood,* 132 Idaho at 95, 967 P.2d at 709; *Aragon,* 114 Idaho at 760, 760 P.2d at 1176.

Our Court adopted the *Strickland* two-prong test to evaluate whether a criminal defendant received effective assistance of counsel. *Mathews,* 133 Idaho at 306, 986 P.2d at 329; *Wood,* 132 Idaho at 95, 967 P.2d at 709; *Giles v. State,* 125 Idaho 921, 924, 877 P.2d 365, 368 (1994). A defendant must prove that counsel's performance was deficient and the deficiency prejudiced the case. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Mathews,* 133 Idaho at 306, 986 P.2d at 329; *Wood,* 132 Idaho at 95–96, 967 P.2d at 709–10. To show a deficiency the defendant must show the attorney's representation fell below an objective standard of reasonableness. *Gilpin–Grubb v. State,* 138 Idaho 76, 81, 57 P.3d 787, 792 (2002). To prove prejudice, the defendant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Id.* When the conviction is the result of a plea as compared to a trial; "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985).

When this Court reviews the district court's factual findings in an ineffective assistance of counsel claim we determine whether the findings were clearly erroneous. *Wood,* 132 Idaho at 96, 967 P.2d at 710. We exercise free and independent review of the district court's application of law. *Id.*

### A. Whether Trial Counsel Were Ineffective By Not Having Dunlap Evaluated Or Seeking A Competency Hearing Before Tendering A Guilty Plea.

Dunlap argues he received ineffective assistance of counsel because his attorneys did not ensure he was competent when he pled guilty. He contends the information his attorneys had available to them required an evaluation for competency pursuant to I.C. § 18–211 be completed prior to Dunlap pleading guilty.

The test to determine whether a defendant is competent to stand trial is " '[w]hether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as · well as factual, understanding of the proceedings against him.' " *Green,* 130 Idaho at 505, 943 P.2d at 931 (quoting *State v. Daniel,* 127 Idaho 801, 803, 907 P.2d 119, 121 (Ct.App. 1995) (citing *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960))). "While the opinion of . . . counsel certainly is not determinative, a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings." *Hernandez v. Ylst,* 930 F.2d 714, 718 (9th Cir.1991).

In a criminal case, counsel has a duty to conduct an adequate investigation. *Mathews,* 133 Idaho at 307, 986 P.2d at 330. In this case, counsel did investigate Dunlap's competency. Prior to the guilty plea counsel had some of Dunlap's prior mental health records for review.

Dunlap had been previously found by various mental health providers to have a manipulative, passive-aggressive personality but to not demonstrate any signs of psychosis. None found him to suffer from a mental illness. As a result, in review of the evidence and materials available to Dunlap's attorneys and the district court prior to the acceptance of Dunlap's guilty plea, neither the district court nor Dunlap's attorneys had any reason to doubt Dunlap's competency. His attorneys and the district court also had the benefit of reviewing additional reports regarding Dunlap's competency before sentencing. Dr. Estess concluded in part:

> 2. I do not think that Mr. Dunlap manifests any evidence of significant psychiatric difficulty. That is, I do not think he is mentally ill. He has at times had periods of depression. Whether or not he has had a major depression or a dysthymic disorder or an adjustment disorder with associ-

ated depressed mood, I think is a bit academic. Importantly at this time, he does not seem significantly depressed to me, from a strictly clinical perspective. He does, I think, manifest evidence of a personality disorder. Features of his personality problems fall into the area of explosive, passive aggressive, and histrionic characteristics.

3. I do not think that Mr. Dunlap suffers from any functional impairment, from a psychiatric perspective. . . .

9. I think Mr. Dunlap is entirely capable of understanding the charges against him, of his plea arrangements, and he is competent to proceed with sentencing consideration.

Dr. Brooks concluded,

[T]he psychological testing is very clearly indicative of an impulsive, explosive individual who is extremely suspicious of others. He is one who can be expected to be extremely shallow, superficial and manipulative in his relationships. . . . The information available at this time points to the existence of a personality disorder. I do not believe that the evidence supports a conclusion that a multiple personality disorder exists.

In reviewing the information presented at the evidentiary hearing for post-conviction relief there still was insufficient information to believe Dunlap was incompetent at the time he pled guilty.

When reviewing this case from the perspective of Dunlap's attorneys at the time Dunlap accepted the guilty plea, there is insufficient evidence to prove they were ineffective. Dunlap failed to prove by a preponderance of evidence that his attorneys provided ineffective assistance of counsel by failing to submit Dunlap to a competency evaluation prior to pleading guilty.

**B. Whether Trial Counsel Were Ineffective In Negotiating And Recommending The Plea Agreement.**

 "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203, 208 (1985). "Where . . . a defendant is represented by counsel during the plea process and enters a plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " *Id.* (citation omitted). Strategic or tactical decisions made by counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gilpin–Grubb,* 138 Idaho at 81, 57 P.3d at 792.

 Dunlap argues he could not have entered a knowing and voluntary plea because his counsel failed to advise him of the best course of action. Dunlap contends his attorneys did not recommend any course of action for him and he was left completely abandoned to decide whether to accept the State's offer. Furthermore, his attorneys failed to give accurate, informed advice on the consequences of a guilty plea. He asserts trial counsels' testimony supports his position. Finally, Dunlap asserts the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases requires counsel to ensure that death is not a possible punishment before advising a client to plead guilty. Dunlap contends there is a reasonable probability he would have proceeded to trial had he been properly advised.

The United States Supreme Court has stated,

[T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved would those facts convince a judge or jury of the defendant's

guilt? ... Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as what a court's judgment might be on given facts.

That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a postconviction hearing.

*McMann v. Richardson,* 397 U.S. 759, 769–70, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763, 772–73 (1970) (citing *Brady v. United States,* 397 U.S. 742, 756–57, 90 S.Ct. 1463, 1473–74, 25 L.Ed.2d 747, 760–61 (1970)).

Dunlap's attorneys evaluated the evidence and determined the State had overwhelming evidence against Dunlap. In their view, the best way to avoid the death penalty was to accept responsibility and attempt to reduce the details the court would be presented with. When attorney Souza was asked if he gave Dunlap the best advice he could, he stated, "Well, I hope that we tried to discuss with him and give him the options that he had at that particular time. That certainly was the intent." Attorney Souza explained,

> [T]here was a decision on his part not to go to trial, and if he didn't go to trial, then what was the best outcome that he could hope for, given the facts and circumstances of this case, and if I remember right, it was discussed in terms of, of course, what the court could do as far as imposing the death penalty or the court giving him fixed life.

The Court finds the trial judge did reasonably determine that the defendant was adequately advised by trial counsel on the proposed plea agreement.

### C. Whether Trial Counsel Were Ineffective In Not Seeking Withdrawal Of The Guilty Plea Prior To Or After Sentencing.

■ Dunlap argues he received ineffective assistance of counsel when his trial attorneys failed to withdraw his guilty plea.

A guilty plea may be withdrawn prior to sentencing if there is a "just reason" to withdraw the plea. *State v. Ballard,* 114 Idaho 799, 801, 761 P.2d 1151, 1153 (1988). The motion shall be denied if the State can show resulting prejudice from the withdrawal. *Id.* A factor to consider is whether the defendant read the presentencing report before filing the motion, and if he has received the report the court has broad discretion to take into account the defendant's motives for filing. *State v. Akin,* 139 Idaho 160, 163, 75 P.3d 214, 217 (Ct.App.2003).

■ Dunlap asserts there are three "just reasons" that trial counsel could have asserted to support a motion to withdraw his guilty plea: (1) counsel learned Gilette was planning to testify to extremely damaging allegations; (2) counsel knew that Gilette was a client of theirs; and (3) counsel learned that Dr. Estess released a prejudicial report that counsel was unprepared to rebut. Dunlap argues that these three things completely undermined the strategy to show his remorse and thus it was necessary for trial counsel to withdraw his guilty plea.

Dunlap's motion had no chance of being granted. Dunlap does not assert his innocence. His motives for requesting the motion would have been suspect in light of the fact it is based on the prejudicial information that came out in Dr. Estess' report and his cellmate's testimony. Dunlap fails to assert any just reason that would have allowed him to withdraw his guilty plea. Therefore, Dunlap fails to prove his trial attorneys were ineffective for failing to withdraw his guilty plea.

### D. Whether Trial Counsel Were Ineffective In Failing To Investigate And Present Evidence In Mitigation.

■ Dunlap argues on appeal he received ineffective assistance of counsel because his attorneys failed to conduct an adequate mitigation investigation. Dunlap contends that such an investigation needed to be completed prior to advising him to plead guilty.

Generally, an issue is moot if it does not present a real and substantial controversy capable of being concluded through a judicial decree of specific relief. *Idaho Sch. for Equal Educ. Opportunity v. Idaho State Bd. of Educ.*, 128 Idaho 276, 281–82, 912 P.2d 644, 649–50 (1996). If the parties lack a legally cognizable interest in the outcome or the issues presented are no longer live, the issues are moot and preclude review. *Id.* at 281, 912 P.2d at 649. When a favorable judicial decision would not result in any relief, the party lacks a legally cognizable interest in the outcome. *See Murphy v. Hunt*, 455 U.S. 478, 481–82, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353, 356–57 (1982).

The State conceded and the district court agreed that Dunlap should have a new sentencing hearing. Dunlap may present any and all mitigating evidence at that time. We do not believe Dunlap's mitigation investigation had to be completed prior to pleading guilty. This issue is moot because even a favorable result would not give Dunlap any additional relief beyond what has already been granted by the district court.

### E. Whether Trial Counsel Were Ineffective In Not Timely Filing The Post–Conviction Petition.

Dunlap argues he received ineffective assistance of counsel when his attorneys did not file a timely post-conviction application. He asserts that laboring under an invalid death sentence for approximately ten years and being denied the benefit of having a consolidated appeal prejudiced him.

This issue is moot because of our decision in *Dunlap II*, 131 Idaho at 577, 961 P.2d at 1180, wherein we allowed Dunlap to proceed on the post-conviction application although it was filed after the 42–day deadline. Furthermore, we do not believe Dunlap has shown prejudice other than his conclusionary statement that the suffered from laboring under his death sentence.

### F. Whether Trial Counsel Were Ineffective Due To Their Conflict Of Interest For Simultaneously Representing The Prosecutor's Key Witness And Dunlap.

On appeal, Dunlap argues that trial counsel labored under three conflicts of interest that adversely affected their representation of him. First, because of the public defender contract, trial counsel faced a financial conflict of interest. Second, the plea agreement where Dunlap stipulated he received effective assistance of counsel created a conflict of interest. Third, the simultaneous representation of the prosecutor's key witness and Dunlap created a conflict of interest that was not waived by Dunlap.

The first two conflicts of interest are being asserted for the first time on appeal and will not be considered by this Court. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Although the third alleged conflict, the simultaneous representation of the prosecutor's key witness and Dunlap, was not specifically ruled on by the district court, the issue was contained in Dunlap's post-conviction application. Therefore, we will consider the issue.

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346 (1980). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Id.* at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 348. Dunlap "bears the burden of showing 'active representation of competing interests' in order to establish a conflict of interest implicating the protection of the Sixth Amendment." *State v. Wood*, 132 Idaho 88, 98, 967 P.2d 702, 712 (1998).

Dunlap pled guilty on December 30, 1991 at approximately 1:45 p.m. Lieutenant Rice completed the interview and received a statement from Dunlap's cellmate, Gillette, the same day at approximately 12:30 p.m.

After December 30, 1991, but before January 21, 1992, Dunlap's attorneys were made aware of Gillette's statement. Thus, the potential conflict arose after the plea agreement. There is no evidence that counsels' performance was adversely affected by the alleged conflict on December 30, 1991. Furthermore, since Dunlap has been granted a

new sentencing hearing, his argument regarding counsels' deficient performance due to a conflict of interest fails because it is moot. He will have different counsel for his resentencing. Dunlap may still investigate Gillette and properly cross-examine him at the resentencing hearing.

## III. THE COURT WILL NOT INQUIRE AS TO THE UNDERLYING UN-CONCONSCIONABILITY OF THE PLEA AGREEMENT

 Dunlap argues the plea agreement he entered into with the prosecution was unconscionable. He contends an unconscionable plea agreement is void and therefore this Court should grant a new trial.

A plea agreement is contractual in nature and must be measured by contract law standards. *See, e.g., United States v. Sutton,* 794 F.2d 1415, 1423 (9th Cir.1986); *State v. Claxton,* 128 Idaho 782, 785, 918 P.2d 1227, 1230 (Ct.App.1996). The interpretation of a contract's meaning and legal effect are questions of law to be decided by the Court if the terms of the contract are clear and unambiguous. *State v. Barnett,* 133 Idaho 231, 234, 985 P.2d 111, 114 (1999). The meaning of an unambiguous contract must be determined from the plain meaning of the contract's own words. *Id.* Where a contract is determined to be ambiguous, interpretation of the contract is a question of fact that focuses on the intent of the parties. *Id.* Whether the facts establish violation of the contract is a question of law over which the court exercises free review. *Id.*

*State v. Hosey,* 134 Idaho 883, 886, 11 P.3d 1101, 1104 (2000).

"The disposition of criminal charges by agreement between the prosecutor and the accused has been recognized by the United States Supreme Court as an important component of our system of justice. *Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427, 432 (1971). Since a guilty plea waives certain constitutional rights, 'a defendant is constitutionally entitled to relief when the state breaches a promise made to him in return for a plea of guilty.' *United States v. Ocanas,*

628 F.2d 353, 358 (5th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981). This rule is based upon the principle that a guilty plea, to be valid, must be both voluntary and intelligent. *'Thus, only when it develops that the defendant was not fairly appraised for its consequences can his plea be challenged under the Due Process Clause.'* *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 [443] (1984). In other words, 'when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand.' *Id."*

*State v. Robbins,* 123 Idaho 527, 540, 850 P.2d 176, 189 (1993) (quoting, *State v. Rutherford,* 107 Idaho 910, 693 P.2d 1112 (Ct.App. 1985)).

In Idaho the contract analogy has been used to interpret plea agreements concerning the parties responsibilities on a plea agreement. Also in order to define those responsibilities, it has been necessary for Idaho's courts to define intent by interpreting unclear or ambiguous language. The contract analogy has never been used in any other context in a criminal case in Idaho. In fact, in *State v. Rutherford,* 107 Idaho 910, 693 P.2d 1112 (Ct.App.1985), reference is made to *United States v. Carrillo,* 709 F.2d 35 (9th Cir.1983) which also limits the contract model as follows:

The law of contracts presents an apt model to guide and inform our analysis in the context of the facts presented by this case. We emphasize, however, that we are not obliged to follow blindly the law of contracts in assessing plea or cooperation agreements in all contexts. Cases may arise in which the law of contracts will not provide a sufficient analogy and mode of analysis. We do not purport to superimpose contract principles upon all such cases.

709 F.2d at 36–37 n. 1.

 There is a significant difference in enforcing a plea agreement as a contract and allowing a criminal defendant to avoid a plea agreement by asserting an affirmative defense available under contract law. The sen-

tencing judge does not participate in the actual negotiations between the defendant and the prosecutor and therefore cannot know all the reasons why a defendant or the state would enter into a plea agreement. It would be an even more impossible job for the appellate court to glean from a record, all the reasons which existed at the time of the entry of a plea for the acceptance of the plea agreement. Therefore, our inquiry must be based upon the due process notion as to whether or not the plea was knowingly, voluntarily and intelligently given. This Court declines to extend unconscionability of contract to the plea agreement analysis.

■ This Court finds that Dunlap had alternatives available to him other than accepting the offered plea agreement; he could have gone to trial or he could have pled guilty without an agreement with the state. Dunlap was not forced to accept the State's offer. Counsel represented him and no threats were made to him. There was no evidence of any fraud, duress, deceit or coercion. The plea agreement was straightforward and was not ambiguous in any way. Dunlap had the opportunity to review the plea agreement with his counsel. The defendant has not proved to the Court that he did not knowingly, voluntarily and intelligently enter into the plea agreement.

## IV. ALLEGED PROSECUTORIAL MISCONDUCT DID NOT DENY DUNLAP A FAIR TRIAL

■ Dunlap argues he was denied a fair trial because the State withheld material information, improperly elicited statements from him, and allowed perjured testimony to be presented. He asserts that the information withheld undermined any conceivable reason to enter the guilty plea and revealed a conflict of interest.

■ Due process requires all material exculpatory evidence known to the State or in its possession be disclosed to the defendant. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Grube v. State*, 134 Idaho 24, 27, 995 P.2d 794, 797 (2000). "[T]here is 'no constitutional requirement that the prosecutor make a complete and detailed accounting to defense of all po-

lice investigatory work on a case.' " *State v. Horn*, 101 Idaho 192, 195, 610 P.2d 551, 554 (1980) (quoting *Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706, 713 (1972)). "There are three essential components of a true *Brady* violation: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 263, 119 S.Ct. 1936, 1939, 144 L.Ed.2d 286, 291 (1999). Impeachment evidence should be viewed in the same manner as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985); *Pizzuto v. State*, 134 Idaho 793, 796, 10 P.3d 742, 745 (2000). However, the United States Constitution does not require the State to disclose material impeachment information prior to entering a plea agreement with the defendant. *United States v. Ruiz*, 536 U.S. 622, 629, 633, 122 S.Ct. 2450, 2455, 2457, 153 L.Ed.2d 586, 595, 597 (2002). One of the reasons behind the Court's holding is that "impeachment information is special in relation to the *fairness of a trial* not in respect to whether a plea is *voluntary* [.]" *Ruiz*, 536 U.S. at 629, 122 S.Ct. at 2455, 153 L.Ed.2d at 595.

In this case, the first component of a *Brady* violation is missing in that Gillette's information is not favorable to Dunlap. As Dunlap argues the information is quite harmful to him because it tends to negate his reasoning for accepting the agreement in the first place—to show his remorse. Dunlap's constitutional rights were not violated because Gillette's statements were not exculpatory. As for the alleged documents from Ohio, there has been no showing how the information might be favorable to Dunlap. Even assuming that Gillette's information was material impeachment evidence according to *Ruiz*, Dunlap's due process rights were not violated. The State could enter into an agreement without revealing material impeachment information. *Id.*

Dunlap invites us to determine that prosecutorial misconduct was committed because

of the manner in which Gillette's statements were obtained from Dunlap. Dunlap also invites this Court to find that the State committed prosecutorial misconduct by presenting Gillette's allegedly false testimony to the court. We decline the invitation because these issues are not ripe for review. Dunlap will be resentenced, and at this point it is mere speculation as to whether or not Gillette will testify or whether the district court will allow the statements to be admitted.

## V. WHETHER THE DISTRICT COURT ERRED IN PRECLUDING DUNLAP FROM CALLING THE PROSECUTOR AS A WITNESS IN THE POST-CONVICTION PROCEEDINGS

■ Dunlap contends the district court committed error by not allowing him to depose the prosecuting attorney. He argues certain information regarding Gillette was only available from the prosecuting attorney because the other witnesses' information was too vague and the information sought was relevant and crucial to his defense.

This Court adopted a three-prong test to determine when it might be appropriate to depose opposing counsel. *State v. Wood,* 132 Idaho 88, 107–08, 967 P.2d 702, 721–22 (1998). It would have to be shown that there is no other means to obtain the information other than deposing opposing counsel; the information sought would be relevant and not privileged; and the information is crucial to the preparation of the case. *Id.* The district court decision to deny the admission of witness testimony is reviewed under the abuse of discretion standard. *Clark v. Klein,* 137 Idaho 154, 156, 45 P.3d 810, 812 (2002).

This Court rules that the district court did not abuse its discretion in denying Dunlap the opportunity to depose the prosecuting attorney. Dunlap has not shown that the information was only available from the prosecuting attorney and the information sought was crucial to the preparation of his case. The information sought regarding the timing of knowledge about Gillette and his information was not crucial to his case. As explained above this information did not need to be given to Dunlap prior to his guilty plea and the information regarding the plea agree-

ment was readily available from two other witnesses, attorneys Souza and Whittier. The district court did not err in denying Dunlap the opportunity to depose the prosecuting attorney.

## VI. DUNLAP WAS INFORMED OF THE NATURE OF THE CHARGES AGAINST HIM AT THE TIME OF HIS PLEA

There can be no question Dunlap was informed by his attorneys and the district court of his rights, the nature of the crime and consequences of a plea of guilty. However, he now posits a unique argument that because the law has changed his plea of guilty is no longer valid. The argument starts with the supposition that "As elements of an offense, Dunlap had a right to a jury trial on the determination of whether aggravators existed beyond a reasonable doubt."

This Court has held in *Porter v. State,* the statutory aggravators of I.C. § 19–2515 are not elements of the crime of first degree murder, 140 Idaho 780, 102 P.3d 1099 (2004). The section "merely set forth the procedures that must be followed in order to impose a death sentence, defined the statutory aggravating circumstances, and required that at least one aggravating circumstance be found beyond a reasonable doubt before a defendant could be sentenced to death." *Id. Ring* requires a jury and not the judge to determine the existence of a statutory aggravator when imposing the death penalty. *Id.* As a result of our recent decision in *Porter,* we find that Dunlap did plead guilty to the proper elements of the crime of first-degree murder.

## VII. WHETHER DUNLAP'S CONVICTION IS UNCONSTITUTIONAL DUE TO CUMULATIVE ERRORS

■ Dunlap argues that the accumulation of errors committed in this case necessitates a new trial.

The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defen-

dant's constitutional right to due process. In order to find cumulative error, this Court must first conclude that there is merit to more than one of the alleged errors and then conclude that these errors, when aggregated, denied the defendant a fair trial.

*State v. Sheahan,* 139 Idaho 267, 286, 77 P.3d 956, 975 (2003) (citations omitted). Finding no errors, we consequently find no accumulation of errors in this case.

## CONCLUSION

Dunlap received effective assistance of counsel during the guilt phase of his case. We decline to extend the contract defense of unconscionability to plea agreements. There was no prosecutorial misconduct which denied Dunlap a fair plea process. The *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) decision does not cause Dunlap's plea of guilty to be invalid. We affirm the district court's order denying the post-conviction application as to the guilt phase. Additionally, Dunlap will have the procedures available to him under *Ring v. Arizona,* at his new sentencing hearing. Case remanded to the district court for further proceedings on sentencing.

Chief Justice SCHROEDER and Justices TROUT, KIDWELL and EISMANN concur.

