**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44291**

| | | |
|---|---|---|
| **SILAS BENJAMIN PARKS,** | ) | **2018 Unpublished Opinion No. 332** |
| | ) | |
| **Petitioner-Appellant,** | ) | **Filed: January 23, 2018** |
| | ) | |
| **v.** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Respondent.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. Jeff M. Brudie, District Judge.

Order denying petition for post-conviction relief, <u>affirmed</u>.

Whitney & Whitney, LLP; Thomas W. Whitney, Moscow, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Silas Benjamin Parks appeals from the district court's order denying his petition for post-conviction relief. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On the morning of June 24, 2009, firefighters responded to reports of a fire at Parks' residence. After extinguishing the flames, firefighters recovered the badly burned body of Parks' pregnant wife, Sarah, from a bedroom within the residence. State forensic pathologist Dr. Jeffrey Reynolds performed an autopsy on the body and concluded that Sarah's cause of death was "[p]robable suffocation or strangulation," that she had died before her body was burned, and that she was approximately twenty weeks pregnant at the time of her death. The Fire Marshal's investigation into the cause of the fire determined that the fire was caused by the

1

introduction of an open flame to available fuels and/or to introduced fuels[1] and had been started at or near the foot of the bed where Sarah's body was discovered.

The State charged Parks with two counts of first degree murder, Idaho Code §§ 18-4001, 18-4003, and one count of first degree arson, I.C. § 18-802. Two attorneys were appointed to represent Parks, who pled not guilty to the charges. After mediation, the State offered to amend the two murder charges to two counts of voluntary manslaughter, I.C. §§ 18-4006(1), 18-4007, if Parks would agree to plead guilty. Without first retaining a forensic pathologist to investigate Dr. Reynolds' conclusions in the State autopsy report, trial counsel advised Parks to accept the plea offer from the State. Consequently, Parks entered into a plea agreement with the State. The district court accepted Parks' guilty pleas and imposed concurrent fifteen-year determinate sentences for the two voluntary manslaughter charges, and a consecutive twenty-five-year sentence with five years determinate for the arson charge. The court subsequently denied Parks' motion for a reduction of his sentence pursuant to Idaho Criminal Rule 35. Parks did not appeal from the judgment of conviction.

In 2011, Parks filed a petition for post-conviction relief alleging his trial counsel were ineffective and that his conviction should be vacated pursuant to I.C. § 19-4901(a)(4). The State moved for summary dismissal of Parks' post-conviction petition. With respect to the issues relevant to this appeal, the district court denied the motion and conducted an evidentiary hearing. Multiple people testified at the hearing including: (1) Dr. Arden, a forensic pathologist retained by Parks to review the State's coroner and autopsy reports; (2) a federal ATF agent who had investigated the fire; (3) a criminal defense attorney retained by the State as an expert witness; (4) Parks; and, (5) Parks' two trial attorneys. After the hearing, the district court concluded that Parks failed to demonstrate that his trial counsel's performance was deficient and denied Parks' petition. Parks timely appeals.

---

[1]     "Introduced fuel" means any combustible item brought to the scene of the fire, like an accelerant, an ignitable liquid, cloth, or paper. "Available fuel" means any combustible item already at the scene of the fire prior to its ignition.

## ANALYSIS

Parks asserts that the district court erred in denying his petition for post-conviction relief after an evidentiary hearing.[2]

### A.    Standard of Review

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Baxter v. State*, 149 Idaho 859, 861, 243 P.3d 675, 677 (Ct. App. 2010). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Baxter*, 149 Idaho at 862, 243 P.3d at 678. Here, Parks does not assert that the district court's factual findings are erroneous, so our review is limited to the district court's application of the relevant law to the facts.

### B.    Ineffective Assistance of Counsel

Parks asserts that he was deprived of his constitutional right to the effective assistance of counsel based on trial counsel's failure to adequately prepare for trial and investigate his case. A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency.

---

[2]    The State argues that Parks has failed to assign any specific error to the district court's conclusions. We note that the State is technically correct about assignments of error; appellate courts will not review actions of the district court for which no error has been assigned and will not otherwise search the record for unspecified errors. *State v. Hoisington*, 104 Idaho 153, 159, 657 P.2d 17, 23 (1983). Although Parks never explicitly stated in his briefs that the district court erred, we need not address the issue of assignments of error because the substantive issues are dispositive.

*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). Where, as here, the petitioner was convicted upon a guilty plea, to satisfy the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct. App. 2006). This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

### 1.      Deficient performance

Parks argues that trial counsel's performance was deficient because counsel advised him to accept the State's plea offer without first retaining a forensic pathologist to investigate the conclusions in the State's autopsy report. According to Parks, his trial counsel's failure to hire an expert in forensic pathology before advising Parks to plead guilty gave Parks only one source of expert testimony--the prosecution's--on the issue of the cause of Parks' wife's death, and thus falls below the duty to conduct a reasonable investigation.

The State asserts that Parks failed to demonstrate error by the district court and failed to show that his trial counsel provided deficient performance by advising Parks to plead guilty before retaining a forensic pathologist to challenge the State's autopsy conclusions.

The district court concluded that Parks failed to meet his burden of showing that trial counsel were deficient. The court determined that trial counsel's advice was not given due to lack of investigation or preparation on the part of counsel, but concluded instead that Parks' counsel investigated the case, prepared a defense, and ultimately advised Parks to accept the plea deal which significantly reduced his potential prison sentence because both attorneys saw the plea deal as the best realistic outcome for their client. We agree.

Determining whether an attorney's pretrial preparation falls below a level of reasonable performance constitutes a question of law, but is essentially premised upon the circumstances surrounding the attorney's investigation. *Thomas v. State*, 145 Idaho 765, 769, 185 P.3d 921,

4

925 (Ct. App. 2008). To prevail on a claim that counsel's performance was deficient, a petitioner must establish that the inadequacies complained of would have made a difference in the outcome of trial. *Id.* It is not sufficient merely to allege that counsel may have discovered a weakness in the State's case. *Id.* We will not second-guess trial counsel in the particularities of trial preparation. *Id.*

Here, the circumstances surrounding the attorneys' investigation reveal that counsel's pretrial preparation did not fall below a level of reasonable performance. The State had strong evidence of Parks' guilt that made counsel's advice to accept the State's plea offer objectively reasonable. Parks told authorities that he had woken up at 6:45 a.m., checked on his wife, and then left at about 7:20 a.m. to drive to a fitness facility to workout. However, it only takes approximately three and one-half minutes to drive from the Parks' residence to the fitness facility, and authorities were able to confirm that Parks swiped his membership card at the facility's card access point at 7:39 a.m. on the morning of the fire. Additionally, the Fire Marshal's investigation concluded that the fire started between approximately 7:33 a.m. and 7:38 a.m., just ten to fifteen minutes before it was initially observed and reported by a witness and just a few minutes before Parks swiped his access card at the gym. The investigation further concluded that the fire was not started by accident, but by the introduction of an open flame to available fuels and/or to introduced fuels. Furthermore, the State pathologist concluded the cause of death was probable suffocation or strangulation because Sarah suffered respiratory arrest prior to cardiac arrest, and the pathologist discovered no evidence of infection, no mechanical trauma, and no evidence of soot or thermal damage in the respiratory tract. So, in preparation for trial, counsel hired an investigator, consulted a fire expert, and were in the early stages of employing a pathologist who would have testified for Parks if the case had gone to trial.[3] Significantly, counsel conducted all of this preparation despite the fact that Parks had told them prior to mediation that he could recall his hands around Sarah's throat and despite the fact

---

[3] Parks' attorneys spoke with Thomas M. Donndelinger, M.D. Dr. Donndelinger informed counsel that he no longer testified at trials. Because Parks needed a pathologist who would be willing to testify at trial, counsel did not further pursue Dr. Donndelinger as a potential witness. Consequently, counsel consulted with Todd C. Grey, M.D., the Chief Medical Examiner for the state of Utah. Counsel discussed the basic facts of Parks' case with Dr. Grey and inquired as to whether he would be willing to review materials related to Mr. Parks' criminal case, including the autopsy report completed by Dr. Jeffrey Reynolds, and to testify at trial, if needed. Dr. Grey indicated that he would be willing to review the materials and testify at trial.

5

that Parks specifically asked trial counsel not to pursue a defense theory based on evidence of an alternate perpetrator. Parks' counsel perceived these statements to mean that Parks was reluctantly communicating that he did, in fact, kill Sarah Parks. Given the circumstances surrounding the attorneys' investigation, counsel's pretrial preparation did not fall below a level of reasonable performance.

Moreover, the district court concluded that Parks had merely alleged that counsel may have discovered a weakness in the State's case. Parks supported his ineffective assistance of counsel claim with an affidavit and report prepared by Dr. Jonathan L. Arden, a consulting practice based in northern Virginia, after Dr. Arden had reviewed the State pathologist's report. Dr. Arden also testified at the hearing on Parks' petition for post-conviction relief. The district court concluded that Dr. Arden's findings did not directly contradict the State pathologist's findings. Like the State's pathologist, Dr. Arden concluded that Sarah was dead before the fire started but that asthma was not the cause of death. The court also noted that although Dr. Arden took issue with the pathologist's ultimate conclusion that Sarah's death resulted from "probable" suffocation or strangulation, Dr. Arden ultimately opined that "in the absence of another obvious type of trauma to explain her death (e.g., a gunshot wound), it is reasonable to consider some form of asphyxiation as having caused her death." There is a fine distinction between the State pathologist's conclusion that Sarah's cause of death was "probable" suffocation or strangulation and Dr. Arden's conclusion that it was reasonable to consider some form of asphyxiation as having caused Sarah's death. Nevertheless, Dr. Arden failed to propose an alternative cause of Sarah's death. Therefore, Parks failed to establish that the inadequacies he has complained of would have made a difference in the outcome of the proceeding.

Finally, the facts create a tight timeline that supports the State's theory of the case that Parks killed his wife, started a fire at or near the foot of the bed where Sarah's body was recovered, and then left the residence and traveled to the fitness facility. Indeed, the post-death arson of the apartment alone was powerful and persuasive circumstantial evidence of Parks having engaged in conduct which caused the death of Sarah Parks and the unborn child. Consequently, counsel believed that Parks would have been convicted of first degree murder if he went to trial. Counsel testified that the best foreseeable outcome at trial would be a finding of guilt for voluntary manslaughter instead of murder. Therefore, when the State ultimately agreed to reduce the charges from murder to voluntary manslaughter, thus reducing Parks' potential

6

sentence from a period of life to a period of twenty to forty years, counsel recognized the State's plea offer as the best possible outcome in the case and reasonably advised Parks to accept it.[4]

In light of the State's strong evidence of Parks' guilt, the district court's conclusion that Dr. Arden's report does not directly contradict the State pathologist's findings, and counsel's pretrial preparation despite Parks' own admissions to counsel, Parks has failed to establish that trial counsel's pretrial preparation fell below an objective standard of reasonable performance. Accordingly, Parks has failed to establish that trial counsel's performance was deficient under *Strickland*.

### 2.       Prejudice

The district court declined to address whether Parks was prejudiced because the court rested its decision to deny Parks' petition on his failure to demonstrate that trial counsel's performance was deficient. Nevertheless, we address the issue here.

Parks argues that he was prejudiced because he would not have agreed to plead guilty had he known that a forensic investigation by his appointed counsel would have revealed facts and conclusions such as those explained by Dr. Arden.

The State argues Parks failed to demonstrate that he was prejudiced by any alleged deficiency in his trial counsel's performance. We agree.

---

[4]       Addressing the issue of counsel's advice prior to a defendant's decision to plead guilty, the United States Supreme Court, has stated:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
>
> That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 769-70 (1970); *see also Dunlap v. State*, 141 Idaho 50, 60-61, 106 P.3d 376, 386-87 (2004).

Even if we were to hold that counsel's advice to plead guilty before employing a forensic pathologist to investigate the conclusions in the State's autopsy report constituted deficient performance, Parks has failed to demonstrate that he was prejudiced by the deficiency. Where the alleged *Strickland* prejudice stems from claims that trial counsel performed an inadequate investigation prior to the entry of a defendant's guilty plea, the United States Supreme Court explained, "[T]he [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Parks asserts that he would not have pleaded guilty but for counsel's alleged errors. However, that does not end the inquiry. The Court continued:

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Lockhart*, 474 U.S. at 59. After reviewing Dr. Arden's report and conclusions, counsel still would not have changed the recommendation as to the plea. As discussed above, when trial counsel advised Parks to accept the State's plea offer, counsel were of the opinion that the best scenario at trial would have been a finding of guilt for voluntary manslaughter instead of murder.[5] One of Parks' two trial attorneys testified at the hearing that he had since reviewed Dr. Arden's report, but that it would not have changed the attorney's advice to Parks regarding the plea deal because the report did not refute the fact that Sarah was dead before Parks started the fire. Counsel were both unequivocally clear that they would not have changed their recommendation to accept the plea deal even if they had conclusions about the autopsy report like those in Dr. Arden's report before mediation. Accordingly, Parks has failed to demonstrate that he was prejudiced by the alleged deficiency.

---

[5]    It is clear from the record that counsel met with Parks on numerous occasions prior to mediation to discuss the various degrees of murder, manslaughter, and arson, as well as to explain the maximum penalties and potential outcomes at trial. Furthermore, Parks testified at the hearing that he understood the maximum sentence for first degree murder was a life sentence and the maximum sentence for voluntary manslaughter was fifteen years.

In sum, Parks' right to the effective assistance of counsel was not violated when trial counsel advised him to accept the State's plea offer without first retaining a forensic pathologist to investigate the State autopsy conclusions.

**C.    Idaho Code § 19-4901(a)(4)**

Parks also asserts evidence of material facts, not previously presented and heard, require vacation of his conviction in the interest of justice pursuant to I.C. § 19-4901(a)(4).[6]  Parks argues Dr. Arden's findings and conclusions, trial counsel's failure to investigate, the unusual pressures placed on Parks by counsel, and the district court's failure to require a factual admission from him at the change of plea hearing are material facts not previously presented and heard.  According to Parks, allowing his conviction to stand in light of these material facts not previously presented and heard will substantially increase the probability of wrongly incarcerating innocent people in future cases because two safeguards will be weakened:  (1) the lawyer's duty to provide effective representation in accordance with Sixth Amendment standards, and (2) the district courts' obligation to ensure that a factual basis for guilty pleas in felony cases exists.

The State argues that Parks failed to preserve this claim in the expanded manner in which he now raises it on appeal, that the district court did not analyze or rule on this claim, and that Parks' claim that he is entitled to relief under I.C. § 19-4901(a)(4) has failed on its merits.  We agree.

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992).  Appellate court review is limited to the evidence, theories, and arguments that were presented below.  *State v. Johnson*, 148 Idaho 664, 670, 227 P.3d 918, 924 (2010).  Below, Parks made bare and conclusory allegations that he was entitled to relief pursuant to I.C. § 19-4901(a)(4).  First in his memorandum in support of the amended petition for post-conviction relief and then in his written closing argument, he wrote:

---

[6]    Idaho Code § 19-4901(a)(4) states:

    Any person who has been convicted of, or sentenced for, a crime and who claims:   . . . (4) That there exists evidence of material facts not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice . . . may institute, without paying a filing fee, a proceeding under this act to secure relief.

The newly presented material facts, not previously presented and heard, require vacatur of the convictions and/or sentences in the interest of justice pursuant to I.C. § 19-4901(a)(4).

Although the above analysis [in regards to the ineffective assistance of counsel claims] is sufficient to resolve this matter in favor of Mr. Parks on constitutional grounds rooted in the Sixth Amendment right to counsel, the reasoning set forth above applies with equal force in the context of Idaho Code § 19-4901(a)(4), and the entirety of the above analysis is incorporated herein.

Parks did not provide any additional analysis or argument with respect to this claim. On appeal, Parks has expanded this argument beyond the scope of what he presented to the district court. Thus, Parks waived this argument because he had failed to present it to the district court.

Moreover, it is well settled that in order for an issue to be raised on appeal, the record must reveal an adverse ruling that forms the basis for assignment of error. *State v. Huntsman*, 146 Idaho 580, 585, 199 P.3d 155, 160 (Ct. App. 2008); *State v. Amerson*, 129 Idaho 395, 401, 925 P.2d 399, 405 (Ct. App. 1996). Parks did not request a specific ruling from the court on this issue, and the court did not enter a specific ruling on this issue. Accordingly, there is no adverse ruling to form the basis for an assignment of error.

Finally, this claim fails on appeal because the district court's ruling on the ineffective assistance of counsel claim, which we affirm, negates any argument that would have been advanced under I.C. § 19-4901. The State correctly argued below that "if the [district court] finds that Mr. Parks' trial counsel made a reasonable decision that made further investigation into the cause of Sarah Parks' death unnecessary, then the [I.C. § 19-4901(a)(4)] 'issue' is moot." Despite the fact that the district court did not analyze this claim as a distinct ground for relief, the court implicitly disposed of the I.C. § 19-4901(a)(4) issue by concluding that Parks' trial attorneys' performance was not deficient. Because Parks' trial attorneys did not render ineffective assistance of counsel, there is no new evidence of material facts that require vacation of the conviction or sentence. For these reasons, Parks' claim that he is entitled to relief in the interest of justice under I.C. § 19-4901(a)(4) fails.

## III.
## CONCLUSION

Parks' trial counsel did not render ineffective assistance of counsel, and Parks did not preserve his I.C. § 19-4901(a)(4) claim for appeal. Therefore, we affirm the district court's order denying Parks' petition for post-conviction relief.

Judge GUTIERREZ and Judge Pro Tem WALTERS **CONCUR**.