198 P.3d 749

STATE of Idaho, Plaintiff–Respondent,

v.

Jesus Ariel CHACON, Jr.,
Defendant–Appellant.

Nos. 33394, 33613.

Court of Appeals of Idaho.

Sept. 10, 2008.

Review Denied Dec. 22, 2008.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daniel W. Bower, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Jesus Ariel Chacon challenges his conviction for several drug offenses and the associated sentences imposed after the district court found that Chacon had failed to perform his obligations under a confidential informant agreement, thereby relieving the State of its obligations under the agreement.

## I.

### STATEMENT OF FACTS

While on probation for possession of methamphetamine with intent to deliver, Idaho Code section 37–2732(a)(1)(A), Chacon was charged on August 26, 2005 with, among other things, five counts of conspiracy to traffic in methamphetamine, I.C. §§ 18–1701, 37–2732(f), 37–2732(a)(1)(A) and 37–2732B(a)(4)(C). Chacon subsequently entered into a plea agreement and confidential informant agreement with the State, whereby he pleaded guilty to the five counts of trafficking. Chacon's main obligation under the confidential informant agreement was to purchase controlled substances from a specifically-named target as directed by the Mini-Cassia Drug Task Force and to provide testimony and cooperation in the prosecution of members of the target's organization. Chacon was also required to work with the Task Force in generally "identifying, apprehending, and convicting those people involved in the use, distribution, and manufacture of controlled substances." In exchange, the State agreed to dismiss four of the five counts if Chacon fulfilled his obligations under the agreement. The State also agreed to recommend a sentence on the remaining count of twenty-five years' imprisonment with five years fixed, a $15,000 fine, and restitution if Chacon fulfilled his end of the agreement. The agreement gave Chacon sixty days to perform his obligations, with the possibility of reasonable time extensions.

Some members of the Task Force were reluctant to have the State enter into the agreement due to their doubt that Chacon could perform or would be willing to put forth the effort necessary to be successful. Nevertheless, the agreement was eventually signed, due largely to Chacon's assurances that he would be able to make buys from the named target, whom the Task Force considered to be of high value. When Chacon later reported that he was unable to arrange any transactions with the target or members of the target's distribution ring, detectives urged him to set up buys from other sources. Despite Chacon's initial assurances of his ability to arrange drug transactions, during a period of more than half a year he did not arrange a single drug purchase from either the named target or any other seller.

After approximately seven months without any buys or any actionable leads, Chacon's case proceeded to sentencing. The State took the position that Chacon had not complied with the confidential informant agreement and that the State was therefore excused from any obligation to dismiss four of the five counts or to recommend the agreed sentence. At the sentencing hearing, Chacon testified that he had made sincere efforts to set up buys first from the named target and then from other dealers per his supervising officer's instructions. He maintained that it became impossible for him to make any buys, and that this was most likely because too many people in the drug dealing community were made wary by Chacon's release from custody pending sentencing and feared that he was working with police. The district court nevertheless found that Chacon had breached the confidential informant agreement and that the State's performance was therefore excused. The court imposed unified thirty-five-year sentences with fifteen-year determinate terms on two counts, and unified fifteen-year sentences with five-year determinate terms on the three remaining counts. Chacon's probation was also revoked in the separate possession case, and that sentence of seven years with five years determinate was executed, to be served concurrently with the sentences for conspiracy.

The two cases have been consolidated on appeal. Chacon challenges the district court's finding that he breached the confidential informant agreement and contends that his sentences in both cases are excessive.

## II.

### ANALYSIS

#### A. Whether Chacon May Enforce the Confidential Informant Agreement

Confidential informant agreements, like plea agreements, are generally governed by contract law principles, *Dunlap v. State*, 141 Idaho 50, 63, 106 P.3d 376, 389 (2004), and both the prosecutor and the defendant are bound by their agreement. *Berg v.*

*State*, 131 Idaho 517, 519, 960 P.2d 738, 740 (1998). A court need not blindly follow contract law principles in reviewing confidential informant agreements, however, because "[c]ases may arise in which the law of contracts will not provide a sufficient analogy and mode of analysis." *Dunlap*, 141 Idaho at 63, 106 P.3d at 389 (quoting *United States v. Carrillo*, 709 F.2d 35, 36–37 n. 1 (9th Cir. 1983)) (unconscionability of contract doctrine not applied to plea agreement analysis). We review questions of law *de novo* and questions of fact for clear error. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382.

■ Chacon acknowledges that he did not fulfill his obligation under the confidential informant agreement to arrange drug purchases. He argues, however, that his nonperformance was excused under the contract law doctrine of impossibility of performance. We disagree. Even if we assume, *arguendo*, that Chacon used his very best efforts to set up drug buys but was unable to do so because his contacts in the drug dealing milieu were suspicious that he was cooperating with law enforcement, the impossibility doctrine is inapplicable. Impossibility is proven by showing that a contingency occurred, the nonoccurrence of which was a basic assumption of the agreement, and that the contingency made performance of the contract impossible. *Kessler v. Tortoise Dev., Inc.*, 130 Idaho 105, 108, 937 P.2d 417, 420 (1997); *Haessly v. Safeco Title Ins. Co.*, 121 Idaho 463, 465, 825 P.2d 1119, 1121 (1992). It is not sufficient to show that the performance simply became more difficult or more expensive than anticipated-it must have been made impossible. Id. Most importantly, it is the task itself which must be impossible-it is not enough that the particular promisor is unable to perform the task if it would be possible for a different promisor to perform. RESTATEMENT (SECOND) OF CONTRACTS § 261 cmt. e (1981); 30 RICHARD A. LORD, WILLISTON ON CONTRACTS § 77:25 (4th ed.2004); 14 JAMES P. NEHF, CORBIN ON CONTRACTS § 74.6 (Joseph M. Perillo ed., 2001); *cf. Rasmussen v. Martin*, 104 Idaho 401, 406, 659 P.2d 155, 160 (Ct.App.1983) (frustration of purpose must be objective, not subjective, to excuse a contractual obligation). Here, Chacon's claimed impossibility was personal to him. He does not suggest that it was impossible for *anyone* to make a drug purchase from the target or other drug dealers. Therefore, the doctrine of impossibility does not operate to excuse Chacon's nonperformance.

■ Having determined that Chacon's failure to perform was not excused due to impossibility, we next consider his argument that his failure to perform was not a material breach, and therefore did not relieve the State of its own performance obligation. According to Chacon, notwithstanding his own failure to perform, he is entitled to the *quid pro quo* promised by the State-the dismissal of all but one of the trafficking charges and the recommendation of a unified twenty-five-year sentence with five years fixed and a $15,000 fine. The district court rejected this contention, holding that Chacon had committed a material breach.

■ If a breach of contract is material, the other party's performance is excused. *J.P. Stravens Planning Assoc., Inc. v. City of Wallace*, 129 Idaho 542, 545, 928 P.2d 46, 49 (Ct.App.1996). This Court has defined a material breach of contract as follows:

> A material breach of contract is a breach so substantial and fundamental that it defeats the object of the parties in entering into the contract. There is no material breach of contract where substantial performance has been rendered. Substantial performance is performance which, despite deviation from the contract or some omission, provides the important and essential benefits of the contract to the promisee.

*Roberts v. Wyman*, 135 Idaho 690, 697, 23 P.3d 152, 159 (Ct.App.2000) (citations omitted). *See also Tentinger v. McPheters*, 132 Idaho 620, 622, 977 P.2d 234, 236 (Ct.App. 1999); *J.P. Stravens Planning Assoc.*, 129 Idaho at 545, 928 P.2d at 49; *Ujdur v. Thompson*, 126 Idaho 6, 9, 878 P.2d 180, 183 (Ct.App.1994); *Mountain Restaurant Corp. v. ParkCenter Mall Assoc.*, 122 Idaho 261, 265, 833 P.2d 119, 123 (Ct.App.1992). Chacon's argument that his breach of the confidential informant agreement was not material is without merit. As Chacon admitted below, his principal obligation under the

agreement was to make buys from the target and provide testimony in any resulting prosecutions. He acknowledges that he did not complete that task. Even when detectives prodded him to set up transactions with any other easier-to-reach drug dealer, Chacon did not do so. His claim that he exerted an honest effort to make drug purchases from the target and others, even if true, does not show substantial performance. The confidential informant agreement did not call for Chacon to utilize his best efforts to make drug buys-it called for him to actually make them. In contractual performance, there is a vast gulf between attempting and accomplishing. The district court's determination that Chacon's breach was material was not clearly erroneous.[1]

## B. Whether Chacon's Sentences Are Excessive

Chacon next asks us to consider whether the district court abused its discretion in the conspiracy case by imposing two sentences of thirty-five years with fifteen years fixed and three sentences of fifteen years with five years fixed, all to run concurrently.

When a sentence is challenged on appeal, we examine the record, focusing upon the nature of the offense and the character of the offender, to determine if there has been an abuse of the sentencing court's discretion. *State v. Young*, 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991). The defendant bears the burden to show that the sentence is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). The issue presented to this Court is not whether the sentence is one that we would have imposed, but whether the sentence is plainly excessive under any reasonable view of the facts. *State v. Burdett*, 134 Idaho 271, 279, 1 P.3d 299, 307 (Ct.App.2000). If reasonable minds might differ as to whether the sentence is excessive, this Court is not free to

substitute its view for that of the trial court. *Id.*

At the sentencing hearing for the conspiracy offenses, Chacon presented evidence that he had quit using illegal drugs and alcohol and had made significant strides toward generally reforming his life. According to Chacon's presentence report, he was doing well in his substance abuse treatment and in his employment. He also had volunteered to participate in programs to help at-risk youth avoid a criminal path. The fact remains, however, that Chacon has an extensive criminal record and was a major and sophisticated drug distributor. He was at the center of a drug ring that distributed approximately five pounds of methamphetamine per week in Idaho communities. During their investigation of Chacon and his confederates, officers seized nearly 1,900 grams of methamphetamine. Before his arrest on the conspiracy charges, he had been convicted of two felonies, both drug-related, and about nineteen misdemeanors. Although there was evidence at sentencing that Chacon had begun making progress toward rehabilitation, the district court properly considered the other goals of sentencing, including the protection of society and deterrence of others, in fashioning Chacon's sentences. In view of the severity of Chacon's offenses and his extensive criminal history, it cannot be said that his sentences for conspiracy to traffic in methamphetamine are plainly excessive under any reasonable view of the facts.

Finally, Chacon asserts that the district court abused its discretion when it did not *sua sponte* reduce his sentence of seven years with three determinate upon revoking Chacon's probation in the possession with intent to deliver case. When we review a sentence that is ordered into execution following a period of probation, we do not base our review upon the facts existing when the sentence was imposed. Rather, we examine all the circumstances bearing upon the decision to revoke probation and require execution of the sentence, including events that

---

1. Chacon also asserts that terms regarding two subjects of the agreement were ambiguous. However, Chacon did not raise this issue below in either presentation of evidence or argument.

We will not address issues raised for the first time on appeal. *State v. Killinger*, 126 Idaho 737, 740, 890 P.2d 323, 326 (1995).

occurred between the original pronouncement of the sentence and the revocation of probation. *State v. Adams*, 115 Idaho 1053, 1055, 772 P.2d 260, 262 (Ct.App.1989); *State v. Grove*, 109 Idaho 372, 373, 707 P.2d 483, 484 (Ct.App.1985); *State v. Tucker*, 103 Idaho 885, 888–89, 655 P.2d 92, 95–96 (Ct.App. 1982). Between the imposition of the sentence and the time Chacon's probation was revoked, he became a large-scale methamphetamine trafficker. The district court could have ordered Chacon's new sentences for trafficking to be served consecutive to his preexisting possession sentence, and was indeed asked to do so by the State, but the court exercised leniency by ordering that all of the sentences would be served concurrently. Chacon has shown no abuse of discretion in the district court's order to execute his original possession sentence without reduction.

### III.

### CONCLUSION

Because Chacon did not substantially perform his obligations under the confidential informant agreement, he is not entitled to enforce that agreement. The sentences imposed by the district court are not excessive given the gravity of Chacon's offenses and his extensive criminal history. Accordingly, the judgment of conviction and sentences for five counts of trafficking in methamphetamine, and the order revoking probation and ordering execution of the original sentence for possession of methamphetamine with intent to deliver are affirmed.

Judge PERRY concurs.

Chief Judge GUTIERREZ, Concurring in the Result.

I concur in affirming Chacon's judgment of conviction, but disagree with the majority's view that the contract law doctrine of impossibility of performance should be strictly applied in this case.

The analysis in these cases begins with the recognition that plea agreements and other similar types of agreements are generally governed by contract law, but that courts need not blindly follow contract law principles. The majority in this case has relied primarily on section 2 of the confidential informant agreement, which focuses on a specifically targeted dealer and states that the defendant must make all buys as required by the state. The viability of full compliance with this term was in doubt from the beginning due to the high profile of Chacon's case and that of his brother, who had also recently been convicted on drug charges. Also, members of the Drug Task Force opined early on that they did not believe Chacon would be able to make the buys required under the agreement. In essence, the experts in the field knew the way the agreement's implementation would play out because they knew that Chacon would be too hot to touch and that 60–180 days was an inadequate amount of time to dispel suspicions of Chacon's cooperation with law enforcement.

In my view, the significant portion of the confidential informant agreement is found in section 1(a), which unequivocally states that the purpose of the agreement is to expose any known criminal groups and to have the defendant provide information about the groups' ongoing or planned criminal activities. Under this provision, Chacon was required to provide leads and information upon which law enforcement would be able to take action. Chacon, in this case, did provide some information; however, the information provided was not considered "actionable" by the state. Chacon, therefore, failed to comply with the main purpose of the agreement. It is for this reason that I concur in the result reached by the majority, and not because of a strict application of the doctrine of impossibility. In my view, the question of how to apply the doctrine of impossibility should be addressed on a case by case basis, properly accounting for each case's unique interplay of facts and constitutional fundamental fairness concerns. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 432, 433 (1971) (plea bargaining phase of the criminal justice process must have safeguards that ensure the defendant receives that which is "reasonably due in the circumstances"). *See also United States v. Harvey*, 791 F.2d 294, 300 (4th

Cir.1986) (principles of contract law must sometimes be tempered when applied to plea agreements, due to inherent constitutional implications). As for the case at hand, the doctrine of impossibility should be applied with less rigidity than the majority's application today. That said, I believe the end result for Chacon would be the same even under a less stringent application and I therefore concur in the result.