## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 36339

| | |
|---|---|
| STATE OF IDAHO, | )<br>)    2010 Opinion No. 34<br>)<br>)    Filed: May 19, 2010<br>)<br>)    Stephen W. Kenyon, Clerk |
|      Plaintiff-Appellant, | |
| v. | |
| TWO JINN, INC., | |
|      Real Party in Interest-Appellant, | |
| and | |
| ROSENDO ARRIAGO NAVARRO, | |
|      Defendant. | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge; Hon. John T. Hawley, Jr., Magistrate.

District court's appellate decision affirming magistrate court's order denying motion to exonerate bond, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Robyn A. Fyffe argued.

Hon. Lawrence G. Wasden, Attorney General; Karin Magnelli, Deputy Attorney General, Boise, for respondent. Karin Magnelli argued.

LANSING, Chief Judge

This is an appeal by Two Jinn, Inc., a bail bond company, from the district court's appellate decision affirming a magistrate court order that denied Two Jinn's motion to set aside a bail bond forfeiture after the bonded defendant was deported.

### I.

### FACTS AND PROCEDURE

Rosendo Arriago Navarro was arrested for driving without privileges and was released from custody on a $500 bail bond posted by Two Jinn, Inc., dba Aladdin Bails Bonds/Anytime

1

Bail Bonds. Navarro pleaded guilty, and sentencing was scheduled for August 15, 2007. When Navarro failed to appear for his sentencing hearing, the magistrate immediately entered an order of bond forfeiture and issued a bench warrant for Navarro's arrest.

On February 6, 2008, 175 days after the order of forfeiture, Two Jinn filed a motion to set aside the forfeiture and exonerate it from liability on the bond. Two Jinn contended that because Navarro had been deported to Mexico, it was entitled to relief under the contract law doctrine of impossibility of performance and, in the alternative, that the forfeiture should be set aside under former Idaho Criminal Rule 46(e)(4), which authorized such action where "justice does not require enforcement of the forfeiture."

The magistrate court denied the motion, primarily on the ground that Two Jinn had provided insufficient and unreliable evidence in support of its motion. Two Jinn appealed to the district court. At the conclusion of the appellate briefing, the district court determined that it needed further evidence and sua sponte ordered a trial de novo on one limited issue. At the subsequent district court hearing, new evidence was presented. The district court eventually issued a decision affirming the magistrate court's denial of Two Jinn's motion. Two Jinn now further appeals.

## II.

## ANALYSIS

### A.    This Court Will Not Consider the New Evidence Presented to the District Court

When there has been an intermediate appeal from the magistrate division to the district court, this Court ordinarily directly reviews the district court's appellate decision. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008). We also ordinarily examine the magistrate's record to determine whether there is substantial and competent evidence to support the magistrate's findings and whether the magistrate's conclusions of law follow from those findings. *Id.* When the district court has appropriately determined to conduct a trial de novo on appeal, however, we would consider the factual record made in the district court. *Gilbert v. Moore*, 108 Idaho 165, 168-69, 697 P.2d 1179, 1182-83 (1985). As we shall explain below, in this case the district court's trial de novo order was not authorized by law, and we therefore restrict our review to the evidentiary record made in the magistrate division.

The only evidence presented to the magistrate court by Two Jinn in support of its motion for exoneration of the bond was an affidavit of its employee, David Gann, and attached

2

documents. The affidavit said that on August 20, 2007, five days after the bond forfeiture order was entered, Gann was assigned to the case. It said that on August 29 Gann telephoned a friend of Navarro's, who said that Navarro had been deported to Mexico, and that over a month later on October 9, 2007, Gann telephoned the United States Immigration and Customs Enforcement (I.C.E.) and spoke to a man named Adam. According to the affidavit, Adam told Gann that Navarro had been deported on August 28, 2007, approximately two weeks after his failure to appear for sentencing. The Gann affidavit also interpreted the content of an attached Ada County jail booking sheet, averring that this record showed that "the Defendant was in the custody of the Ada County Sheriff on July 27, 2007 through August 1, 2008, when he was released to I.C.E." In its order denying the motion, the magistrate held that "the record in this case does not conclusively show Defendant was actually deported"; rather, the magistrate said, the Gann affidavit with its attached documents "indicates" that Navarro "may have been" deported and that Navarro "may have been" in the custody of the Ada County jail at the time specified. It appears that the magistrate found Two Jinn's hearsay evidentiary showing to be less than convincing and that the magistrate declined to rely upon Gann's explanation of the content of an ambiguous jail record attached to his affidavit.

In its appeal to the district court, Two Jinn attached to its appellant's brief three I.C.E. documents indicating that Navarro had been deported on August 27, 2007. These documents had not been submitted to the magistrate, however, because they apparently were obtained after the magistrate's decision. The State, in its briefing and argument below, did not object to this impermissible procedure.[1]

At the conclusion of the appellate briefing to the district court, the district court determined that it needed further evidence and sua sponte ordered a trial de novo on one limited issue, saying:

> The Court intends to take additional evidence on one point only--how and why the Defendant, Navarro, was taken into the Ada County Jail on July 27, 2007. More specifically, the Court orders the parties to present a witness from Ada

---

[1]     Appellate court review is limited to the evidence that was presented in the trial court, and an attempt to introduce new evidence on appeal by attaching documentation to an appellate brief "is improper and will be disregarded." *Nelson v. Nelson*, 144 Idaho 710, 714, 170 P.3d 375, 379 (2007).

County Jail Inmates Record personnel regarding the item "Charge: S LE-403-F" and what that charge means. The Court further orders the parties make a PIR request specifically regarding the Jail Booking Sheet.

At the ensuing hearing, Two Jinn called an Ada County records supervisor, who testified concerning the jail booking sheet that was attached to Gann's affidavit. The supervisor testified that Navarro was booked into the Ada County jail on July 27, 2007, on an immigration hold and that he was released to federal authorities on August 1, 2007. The supervisor further stated that Ada County had a contractual agreement with the U.S. Marshall's Department to hold those in federal custody at the county jail, including those held for immigration purposes. Finally, the supervisor said that if Navarro had been in the county jail on August 15, the date of his scheduled sentencing, he would not have been transported to the courthouse absent a writ of habeas corpus, which is usually received from the prosecutor or the court. After receiving this additional evidence, the district court issued a decision that affirmed the magistrate's order denying Two Jinn's motion.

We conclude that the partial trial de novo procedure utilized by the district court here was not permissible. In *Leavitt v. Leavitt*, 142 Idaho 664, 669, 132 P.3d 421, 426 (2006), our Supreme Court considered a similar procedure where the district court conducted a partial trial de novo on a single issue during the intermediate appeal from a magistrate's decision. At the time of the intermediate appeal, former Idaho Rule of Civil Procedure 83(b) directed that all appeals from the magistrate's division were to be heard by the district court as an appellate proceeding "unless the district court orders a trial de novo." Under that version of the rule, our Supreme Court held that the district court had erred by conducting a trial de novo on only a portion of the factual issues. The Court said:

> [U]nder the version of Rule 83 governing this case, the district court could proceed with the appeal from the magistrate court's decision in one of two ways: (1) the district court could act as an appellate court and consider the record from the magistrate court, yet hear new evidence on matters not addressed below because they occurred after the appeal was filed; or (2) the district court could choose to wipe the slate clean and conduct a "full" trial de novo. In this case, the district court did neither. There was no authority for the district court to decide that the evidence as to [one designated issue] was insufficient and allow Crawford a new opportunity to present evidence on an issue that had already been tried and decided.

4

*Id.* at 669, 132 P.3d at 426.  Because there "was not a valid basis for the manner in which the district court attempted to conduct this case on appeal," the Supreme Court determined that it would review the magistrate court's decision directly.  *Id.*

In 2004, after the district court acted in *Leavitt*, but before the Supreme Court issued its decision, the Supreme Court amended I.R.C.P. 83(b) to provide:

> **(b) Magistrate Appeals.** All appeals from the magistrate's division shall be heard by the district court as an appellate proceeding.  If there is not an adequate record of the proceedings in the magistrate's division, the district court may order a trial de novo or remand the matter to the magistrate's division.  All appeals from the small claims department of the magistrate[']s division shall be heard by an attorney magistrate as a trial de novo on the merits.

Speaking of this amended version of the rule, the Supreme Court stated in its *Leavitt* decision:

> Under the more restrictive, current version of Rule 83(b), the district court is directed to hear all appeals as an appellate proceeding unless "there is not an adequate record of the proceedings in the magistrate's division." The phrase "an adequate record" refers only to the *condition* of the record (relating to properly functioning recording equipment, etc., at the magistrate court); "adequacy" does not refer to the quality or sufficiency of the information found *in* the record.

*Id.* at 669 n.2, 132 P.3d at 426 n.2.

That 2004 version of the rule remains in effect today and applies here.  The Idaho Rules of Civil Procedure apply to all "actions, proceedings and appeals of a civil nature."  *See* I.R.C.P. 1(a).  We agree with the Ninth Circuit Court of Appeals' observation that a bond forfeiture proceeding, "although arising from a prior criminal proceeding, is nevertheless a civil action."  *United States v. Vaccaro*, 51 F.3d 189, 191 (9th Cir. 1995).  Therefore, I.R.C.P. 83(b) governs Two Jinn's appeal to the district court.  According to *Leavitt*, that rule allows a trial de novo only when the condition of the record, not its evidentiary content, is inadequate.

Here, there was no problem with the condition of the record made in the magistrate court; the district court ordered a partial trial de novo because it wanted a more complete explanation of evidence already in the record and additional evidence about Navarro's presence in the Ada County jail.  The district court's order for a partial trial de novo violated the directive of *Leavitt* and afforded Two Jinn an opportunity to present new evidence after the magistrate had already concluded that Two Jinn had failed to prove its claim.  For this reason, we will review only the evidence presented to the magistrate court.

5

## B. Applicability of Rules of Evidence

The magistrate held that "the record in this case does not conclusively show Defendant was actually deported." It is apparent that the magistrate was unwilling to rely on hearsay declarations in the Gann affidavit to establish that Navarro had been deported and was further unwilling to give weight to Gann's interpretation of a jail record attached to his affidavit. On appeal, Two Jinn asserts the magistrate erred by not giving evidentiary weight to the hearsay within the Gann affidavit because the rules of evidence do not apply to proceedings seeking relief from a bond forfeiture. Two Jinn relies upon Idaho Rule of Evidence 101(e)(3) which provides:

> **(e) Rules inapplicable.** These rules, other than those with respect to privileges, do not apply in the following situations:
>
> . . . .
>
> **(3) Miscellaneous proceedings.** Proceedings for extradition or rendition; sentencing, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; *and proceedings with respect to release on bail or otherwise*.

(Emphasis added.) According to Two Jinn, the "or otherwise" is intended to encompass proceedings on a motion for relief from a bond forfeiture. In our view, however, this language in the rule refers to criminal proceedings concerning release of a defendant on bail, and the "or otherwise" does not include, as argued by Two Jinn, any matter tangentially involving bail. Rather, "or otherwise" modifies only the immediately preceding phrase, "release on bail," and therefore refers to the release of a defendant on conditions other than bail such as release on the defendant's own recognizance. Federal courts interpreting Federal Rule of Evidence 1101(d), with the same language, have reached the same conclusion. In *United States v. Vaccaro*, 719 F. Supp. 1510, 1516, 1522 (D. Nev. 1989) the court held that the language exempted from the rules of evidence only proceedings directed to whether a defendant would be released on bail and whether, in light of the "or otherwise" language, additional conditions of release to ensure the appearance of the defendant and the safety of the community would be imposed. The court said, "While 'proceedings with respect to release on bail or otherwise' are specifically excepted from application of the Rules of Evidence, we do not read that exception to include bond forfeiture proceedings, which are basically civil contract actions." *See also United States v. Honken*, 378

F. Supp. 2d 1010, 1023-24 (N.D. Iowa 2004) (holding that the "or otherwise" does not create a separate category of "miscellaneous proceedings" but instead relates to conditions of release).

Thus, Two Jinn is incorrect in arguing that the hearsay components of Gann's affidavit were admissible. Even in the absence of an objection by the State, the magistrate did not err by discounting Gann's hearsay averments and giving them little weight as "[i]t is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *KMST, LLC v. County of Ada*, 138 Idaho 577, 581, 67 P.3d 56, 60 (2003).

## C. Impossibility of Performance

We next consider Two Jinn's argument that it should be relieved from the forfeiture of its bond by application of the contract law doctrine of impossibility of performance because it was impossible for Two Jinn to return Navarro to the Idaho court after he was deported. Even if we assume that Two Jinn sufficiently demonstrated that Navarro was deported, the magistrate correctly rejected this claim.

A bail bond agreement is a suretyship contract between the state on one side and an accused and his or her surety on the other. *State v. Castro*, 145 Idaho 993, 995, 188 P.3d 935, 937 (Ct. App. 2008); *State v. Abracadabra Bail Bonds*, 131 Idaho 113, 116, 952 P.2d 1249, 1252 (Ct. App. 1998). The extent of the surety's undertaking is determined by the bond agreement and is generally subject to the rules of contract law and suretyship. *Id.* Two Jinn's contractual obligations are expressed in its bond agreement by a statement that Two Jinn:

> undertakes that the above-named defendant will appear in the above-named court on the date above set forth to answer any charges in any accusatory pleading based upon the acts supporting the complaint filed against him/her and as duly authorized amendments thereof, in whatever court it may be filed and prosecuted, and will at all times hold him/herself amenable to the orders and process of the court, and if convicted, will appear for pronouncement of judgment of grant of probation; or if he/she fails to perform either of these conditions, that [Two Jinn] will pay the people of the State of Idaho the sum of [$500.]

The common law doctrine of impossibility of performance operates to excuse a party from liability for nonperformance of his or her obligations under a contract. *See Kessler v. Tortoise Dev., Inc.*, 130 Idaho 105, 108, 937 P.2d 417, 420 (1997); *Haessly v. Safeco Title Ins. Co.*, 121 Idaho 463, 465, 825 P.2d 1119, 1121 (1992); *State v. Chacon*, 146 Idaho 520, 523, 198 P.3d 749, 752 (Ct. App. 2008); *Ferguson v. City of Orofino*, 131 Idaho 190, 193, 953 P.2d 630,

633 (Ct. App. 1998). Impossibility is proven by showing that a contingency occurred, the nonoccurrence of which was a basic assumption of the agreement and that the contingency made performance of the contract impossible. *Kessler*, 130 Idaho at 108, 937 P.2d at 420; *Haessly*, 121 Idaho at 465, 825 P.2d at 1121; *Chacon*, 146 Idaho at 523, 198 P.3d at 752.

Two Jinn asserts that because Navarro had been deported, it was impossible for Two Jinn to perform its "obligation" to surrender Navarro to the Ada County jail after the bond forfeiture. Two Jinn does not argue that the language of the bond agreement itself obligated Two Jinn to produce the defendant in court (as distinguished from an obligation to pay the bond amount if the defendant failed to appear). Rather, Two Jinn argues that "existing law becomes part of the bail bond agreement, as though the contract contains an express provision to that effect" and that provisions of former I.C. § 19-2927 and/or former Idaho Criminal Rule 46(g) were incorporated into the suretyship contract.[2] Former section 19-2927 provided, "If, within one hundred eighty (180) days of the date of forfeiture, a person, other than the defendant, who has provided bail for the defendant, surrenders the defendant to the jail facility of the county which issued the warrant, the undertaking of bail or deposits are thereby exonerated." Former Rule 46(g) stated, "if the defendant appears or is brought before the court within one hundred eighty (180) days after the order forfeiting bail, the court shall rescind the order of forfeiture and shall exonerate the bond." Thus, Two Jinn's position that Navarro's deportation made Two Jinn's own performance impossible is based on the premise that Idaho's statutes and rules on setting aside a bond forfeiture became part of the suretyship contract.

Two Jinn's theory that Idaho's bail statutes and rules authorizing relief from forfeiture became part of its promised performance under the suretyship contract is without merit. Although we acknowledge that "existing law becomes part of a contract," including a bail bond contract, "as though the contract contains an express provision to that effect," *Abracadabra Bail Bonds*, 131 Idaho at 116, 952 P.2d at 1252, that proposition does not allow the distortion of a statute or rule. Former I.C. § 19-2927 and former I.C.R. 46(g) do not specify any terms that must be included in a suretyship contract, nor do they define any obligation of a bonding

---

2    Effective July 1, 2009, former I.C. § 19-2927 was repealed by S.L. 2009, ch. 90, § 1 and replaced by the Idaho Bail Act, I.C. § 19-2901, *et seq.* Also, Idaho Criminal Rule 46 was amended twice in 2009, the latest amendment effective July 1, 2009.

company. Specifically, they do not *obligate* a bail bondsman to surrender a defendant to the court within 180 days after forfeiture of the bond. Rather, they provide the bondsman an *opportunity* to gain relief from a forfeiture by so surrendering the defendant. That is, the statute and rule gave Two Jinn a right to exoneration *if* it produced the defendant, not a contractual obligation to produce the defendant. Because the former statute and rule did not define any obligation of the surety from which Two Jinn could be relieved, there is no logic nor legal merit in Two Jinn's call for application of the contract law doctrine of impossibility of performance. The magistrate did not err in denying relief under the theory that Two Jinn's contractual performance was rendered "impossible" because the defendant had been deported. Navarro's deportation does not render it impossible for Two Jinn to pay the face amount of the bond, an obligation that it clearly did contract to perform in the event of his failure to appear.

**D.      Denial of Relief Under I.C.R. 46(e)(4)**

Two Jinn next argues that it was entitled to relief from the forfeiture under terms of former I.C.R. 46(e)(4), which stated in part:

> The court which has forfeited bail before remittance of the forfeiture may direct that the forfeiture be set aside upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture.

In addressing a request to set aside a forfeiture under this rule, in *State v. Quick Release Bail Bonds*, 144 Idaho 651, 167 P.3d 788 (Ct. App. 2007), we described factors to be considered by the trial court and the standard for our review of the trial court's decision, as follows:

> The decision whether to set aside a forfeiture or exonerate bond under I.C.R. 46(e)(4) is committed to the trial court's discretion. *State v. Rupp*, 123 Idaho 1, 3, 843 P.2d 151, 153 (1992) (motion to set aside forfeiture); *State v. Fry*, 128 Idaho 50, 910 P.2d 164 (Ct. App. 1994) (same). In reviewing a trial court's exercise of discretion we consider whether the trial court (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of such discretion and consistently with applicable legal standards; and (3) reached its decision by an exercise of reason. *Rupp*, 123 Idaho at 3, 843 P.2d at 153.
>
> In *Fry* we identified several factors for the trial court's contemplation when considering whether to order forfeiture of all or part of a defendant's bail when the defendant is incarcerated in another jurisdiction. We stated:
>
> > In deciding how much, if any, of the bond to forfeit, the court should also consider: (1) the willfulness of the defendant's violation of bail conditions; (2) the surety's participation in locating and apprehending the defendant; (3) the costs, inconvenience, and prejudice suffered by the state as a result of the violation; (4) any intangible costs; (5) the public's

interest in ensuring a defendant's appearance; and (6) any mitigating factors.

*Fry*, 128 Idaho at 54, 910 P.2d at 168. These same factors are relevant to the inquiry here--whether to vacate a forfeiture and exonerate bail in whole or in part. Of course, the *Fry* factors are not all-inclusive. A trial court may give weight to other relevant factors, including whether the State exhibited any actual interest in regaining custody of the defendant through prompt efforts to extradite him, whether the bonding company has attempted to assist or persuade the defendant to expedite his return to Idaho by exercising his rights under the Interstate Agreement on Detainers, I.C. § 19-5001, *et seq.*, and the need to deter the defendant and others from future violations.[3]

*Id.* at 655, 167 P.3d at 792. It is the surety's burden to establish grounds for relief from the forfeiture. *See People v. Diaz-Garcia*, 159 P.3d 679, 682 (Colo. Ct. App. 2006).

The magistrate court rejected Two Jinn's contention that justice did not require enforcement of the forfeiture in this case, saying that Two Jinn had presented little to no evidence concerning any of the *Fry* factors. The court stated that it could only assume that Navarro's non-appearance was willful, that no mitigating circumstances were shown and, notably, that "[t]here is no evidence in the record that Two Jinn, Inc. diligently endeavored to bring defendant before the court."

The record supports the magistrate's findings. In the absence of reliable evidence that Navarro had been deported, there was no clear showing that his violation of the bail conditions was not willful, and little to support Two Jinn's assertion that justice did not require enforcement of the forfeiture. Even if we assume a sufficient showing of deportation, the magistrate did not abuse his discretion in declining to set aside the bond forfeiture. Although there were no apparent associated costs suffered by the State, the State was obviously prejudiced by its inability to prosecute Navarro. Most significantly, the evidence did not show that Two Jinn acted timely and diligently to ensure Navarro's presence in court. The evidence that was presented shows that Two Jinn did not take expeditious action after the notice of forfeiture issued on August 15, 2007. Rather, after being assigned to the case on August 20, 2007, Gann's first reported act on the case was a telephone call made on August 29, two weeks after the forfeiture and the day after Navarro allegedly was deported. At that time it was already too late for the

---

[3]     Factors for the court's consideration in addressing a motion to set aside a forfeiture are now identified in I.C.R. 46(h).

10

State to make any effort to regain custody of Navarro and complete this prosecution before his deportation. Further, the record contains no indication that once Two Jinn received hearsay reports that Navarro had been taken into federal custody, it promptly so informed the prosecutor or the court.

Two Jinn would have us hold that proof that a defendant was deported ipso facto satisfies the former Rule 46(e)(4) criterion that "justice does not require the enforcement of the forfeiture." We decline to do so. In our view, it is appropriate for the court to take into account the diligence and efforts of the surety to locate the defendant and notify the court or prosecutor of deportation proceedings, as well as any conduct of the State that may have caused the deportation, and any other pertinent factors. In short, factors of the type described in *Quick Release* are to be weighed in the event of a deportation just as they are in other cases. Applying those factors in the present case, Two Jinn has not shown that the magistrate abused his discretion in denying relief from the bond forfeiture.

## III.

## CONCLUSION

The district court's decision affirming the magistrate's order denying Two Jinn's motion to set aside bond forfeiture and to exonerate its bond is affirmed. No costs or attorney fees are awarded on appeal.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**

11